GARY M. RESTAINO
United States Attorney
District of Arizona
CARIN C. DURYEE
Assistant U.S. Attorney
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone: 520-620-7300
Email: carin.duryee@usdoj.gov
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| United States of America, | CR 19-03408-TUC-JGZ |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING MEMORANDUM |
| v. | |
| Jeremy Lamb, | |
| Defendant. | |

Now comes the United States, by and through its undersigned attorneys, and submits the following sentencing memorandum for the sentencing to be held in this matter on October 13, 2023:

I.  **PSR Guideline Calculations**

The government agrees with the calculations as stated in the Presentence Investigation Report (PSR). The guideline calculations place the defendant at a total offense level of 41, which results in a post-acceptance guideline range of 360 months to life imprisonment.

In this case, the government and the defendant have entered into a plea agreement with numerous conditions, including a sentencing range between 216 and 288 months. For the reasons contained in the PSR, herein, and to be discussed at sentencing in this matter, the government recommends and requests that the

Court sentence the defendant to no less than 288 months imprisonment, to be followed by supervised release with stringent sex offender supervision for life.

## II. Factual Background

On or about November 5, 2019, a Homeland security Investigations (HSI) law enforcement officer acting in an undercover capacity (UC) posted a profile on a chatting application in connection with an investigation to identify people in the area who were looking to engage in sexual activities with minors; the UC was approached by and began chatting with an individual who was ultimately identified as the defendant. Early in the online conversation, the UC identified himself as a 14-year-old minor female, and the defendant initially asked questions in an effort to determine whether the UC was a real teen girl, but then moved on to ask the UC about her previous sexual experiences and indicating that he wanted to engage in sexual acts with the underage girl. Using an App called "Telegram," Lamb sent naked photos and videos of himself touching his genitals to the UC. Additionally, he told the UC he would bring illicit drugs and alcohol when they met.

On November 21, 2019, the defendant asked the UC to use a mirror take naked photos of herself, showing her genitals. He also stated he would be spending the night at a motel and asked if she could stay with him on the night of the 22nd. On November 22, 2019, the defendant, who was on pre-trial release for Aggravated Domestic Violence charges in Maricopa County, traveled from Phoenix to Sierra Vista and arrived at the agreed-upon location to meet the UC. A search of the truck he drove to the meet revealed that he had brought alcohol and methamphetamine. A preliminary search of the cellphone he was using during the drive revealed numerous images and several videos of child pornography depicting sex acts with children as young as toddlers.

A deeper review of the defendant's cellphone revealed larger numbers of child pornography videos along with a great deal of evidence that the defendant had previously engaged in sexual exploitation of children and was actively continuing to seek such opportunities. The investigation by HSI identified at least one such victim, who revealed that the defendant had sexually abused her at age 6 or 7. The defendant's own conversations found within his cellphone also confirmed this, as demonstrated by some of the chats attached as Exhibit A hereto where he discusses having previously had an "open family" situation with an ex-girlfriend who had a daughter.[1]

Other chats recovered from the Defendant's phone include several other references to having engaged in sexual abuse of minors, to include statements on November 15, 2019 that "I've been destroying underage pussy" and on November 21, 2019 that "I have fucked 3 underage in last cpl weeks. Have had hotel rooms." He also brags about how much child sex abuse material he has in a conversation on September 25, 2019 with a man named Andrew, who he sent many such videos to, saying "I have sooooo much. 3 t USB flash half full." Worse, the chats on defendant's phone demonstrate a determination to continue to access children for his sexual pleasure again, as he plots with other like-minded individuals about how to lower a child's defenses and engage in sexual activity with children in a way that reduces the chances of the child telling anyone. (See selected chats attached hereto as Exhibit B.)

---

[1] In the chats about this relationship, the defendant at one point sends an image to a person and references the name of the child interviewed by HSI, and her mother; he also indicates that the "open" relationship ended when the father of the children got involved, which is consistent with all reports regarding the investigation of the child abuse in Maricopa County. The reports and statements by the children confirmed that the father of the children discovered Lamb's physical abuse of his son and called the police, and that the children were thereafter kept from Lamb.

The Defendant's criminal proclivities do not end with sexual abuse of children and sending large quantities of CSAM while talking with others about where he might find a new young victim. They do not merely include bringing illicit drugs and stolen cellphones to a minor he expected to give them to. His criminal history also shows a history of aggravated domestic violence, methamphetamine and other substance abuse, child abuse, and antisocial behavior and attitudes. In other words, before the Court stands a man who quite simply has no respect for laws or boundaries, and from whom the community needs protection.

### III. SENTENCING CONSIDERATIONS UNDER 18 U.S.C. SECTION 3553(a)

Although the U.S. Sentencing Guidelines are advisory, the Supreme Court has declared that "the Guidelines should be the starting point and the initial benchmark" for sentencing, as a matter of administration and to secure nationwide consistency. *Gall v. United States*, 552 U.S. 38, 41 (2007). Therefore, the Court still begins its analysis by properly calculating the applicable range Defendant faces here under U.S.S.G. § 2G2.2. *See also, United States v. Booker*, 543 U.S. 220, 245 (2005). The Guidelines "seek to embody the § 3553(a) considerations, both in principle and in practice" and reflect "a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Rita v. United States*, 551 U.S. 338, 350 (2007). In *United States v. Henderson*, 649 F.3d 955 (9th Cir. 2011,) the Ninth Circuit specifically emphasized that the child pornography guidelines must remain the beginning point and benchmark of sentencing for such offenses, even when a court disagrees with applicable guidelines in individual cases. *Id.* at 968. Moreover, while the Ninth Circuit in *Henderson* held that a court's disagreement with the guidelines for policy reasons may be used as a reason to give a below-

guidelines sentence, the Court also emphasized that a district court may "disregard the Guidelines only where it is 'reasonable' for a court to do so." *Id*. (Justice Callahan concurring, citing *U.S. v. Pepper*, 131 S.Ct 1229, 1252 (2011)). Thus, in child pornography cases, a significant number of courts from across the country, including the Ninth Circuit, have consistently upheld guideline sentences for child pornography cases as reasonable. *See, e.g., United States v. Carlson*, 395 Fed.Appx. 413 (9th Cir. 2010) (unpublished) (98 month sentence reasonable); *United States v. Blinkinsop*, 606 F.3d 1110 (2010) (within-guidelines sentence of 97 months affirmed, with recognition that "when a district judge imposes a sentence within the Guidelines range, it is probable that the sentence is reasonable" and that a "sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case.") [2]

---

[2] *See also*, *United States v. Sanders*, 2014 WL 768449 (9th Cir. Feb. 27, 2014) (unpubl); *United States v. Rice*, 540 F. App'x 782 (9th Cir. 2013); *United States v. Mills*, 518 F. App'x 540 (9th Cir. 2013); *United States v. Maggio*, 499 F. App'x 696 (9th Cir. 2012); *United States v. Frantz*, 485 F. App'x 890 (9th Cir. 2012); *United States v. Grigsby*, 469 F. App'x 589 (9th Cir. 2012); *United States v. Shigley*, 451 F. App'x 705 (9th Cir. 2011); *United States v. Maier*, 639 F.3d 927 (9th Cir. 2011); *United States v. Aguirre*, 448 F. App'x 670 (9th Cir. 2011); *United States v. Alfaro*, 446 F. App'x 840 (9th Cir. 2011); *United States v. Psick*, 434 F. Appx 646 (9th Cir. 2011); *United States v. Aglony*, 421 F. App'x 756 (9th Cir. 2011); *United States v. Anthony*, 421 F. App'x 674 (9th Cir. 2011); *United States v. Richards*, 414 F. App'x 911 (9th Cir. 2011); *U.S. v. Reilly*, 662 F.3d 754 (6th Cir. 2011)(151 month guideline sentence reasonable for distribution of child pornography); *United States v. Davis*, 402 Fed.Appx 607 (2nd Cir., 2010) (unpublished)(guideline sentence reasonable despite defendant's age and health issues); *United States v. Scalise*, 398 Fed. Appx. 736 (3rd Cir. 2010)(guideline sentence upheld); *United States v. Stabile,* 633 F.3d 219 (3rd Cir. 2011); *United States v. Moore*, 373 Fed.Appx. 168 (3rd Cir. 2010) (unpublished) (120 months reasonable); *United States v. McMickens*, 373 Fed.Appx. 226 (3rd Cir. 2010) (unpublished)(109 months for receipt reasonable); *United States v. Garcia*, 402 Fed.Appx. 768 (4th Cir., 2010) (unpublished)(guideline sentence reasonable); *United States v. McKee*, 2010 WL 1664081 (D.Md. April 21, 2010) (unpublished); *United States v. Warner*, 399 Fed.Appx. 88 (6th Cir. 2010) (unpublished)(guideline sentence upheld); *United States v. McNerney*, 636 F.3d 722 (6th Cir. 2011); *United States v. Brown*, 634 F.3d 954(7th Cir. 2011)(240 months for possession and transportation upheld); *United States v. Coopman*, 602 F.3d 814 (7th Cir. 2010)(151 month guideline sentence reasonable for possession and receipt); *United States v. Maulding*, 627 F.3d 285 (7th Cir. 2010)(declining to apply reasoning of *Dorvee*); *United States v. Koch*, 625 F.3d 470 (8th Cir. 2010)(78 months for possession reasonable); *United States v. Bauer*, 626 F.3d 1004 (8th Cir. 2010)(guidelines sentence upheld for attempted receipt); *United*

In this instance, the government believes the guidelines provide appropriate guidance as to the seriousness of the defendant's offense, but provided a plea offer which allowed for mitigation arguments and anticipated objections to some of the sentencing enhancements. The government stands by its plea agreement but strongly urges the Court to sentence the defendant to 288 months, the maximum allowable sentence pursuant to the plea agreement. The defendant's history and conduct in this case merit nothing less.

### 1.      **The Harm of Child Pornography**

This defendant not only attempted to create new/original child pornography by seeking explicit images from a UC and planning to meet, but he also possessed and distributed a large amount of such explicit images and videos. In terms of the harm done to the children depicted in child pornography images, the Ninth Circuit has determined that there is no difference between the production of child pornography and other child pornography crimes that cause the distribution of the images, as the "distribution of photographs and films depicting sexual activity by juveniles is intrinsically related to the sexual abuse of children. . . . [T]he materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation." *United States v. Boos*, 127 F.3d 1207, 1211 (9th Cir. 1997), quoting *New York v. Ferber*, 458 U.S. 747, 759 102 S.Ct. 3348, 3355, 73 L.Ed.2d 1113 (1982).

> In *Ferber*, 458 U.S. 747 (1982), the Supreme Court noted:
> As one authority has explained: [P]ornography poses an even greater threat to the child victim than does sexual abuse or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the

---

States v. Regan, 627 F.3d 1348 (10th Cir. 2010)(guidelines reasonable in receipt case);*United States v. Wayerski*, 624 F.3d 1342 (11th Cir. 2010); and *United States v. Alfaro-Moncada*, 607 F.3d 720 (11th Cir. 2010)(guideline sentence upheld).

mass distribution system for child pornography. Shouvlin, Preventing the Sexual Exploitation of Children: A Model Act, 17 Wake Forest L.Rev. 535, 545 (1981).

*Ferber*, 458 U.S. at 758. *See also*, Schoettle, *Child Exploitation: A Study of Child Pornography*, 19 J.Am.Acad.Child Psychiatry 289, 292 (1980) 292 ("[I]t is the fear of exposure and the tension of keeping the act secret that seem to have the most profound emotional repercussions"); *Note, Protection of Children from Use in Pornography: Toward Constitutional and Enforceable Legislation*, 12 U.Mich.J. Law Reform 295, 301 (1979) (interview with child psychiatrist: "The victim's knowledge of publication of the visual material increases the emotional and psychic harm suffered by the child"). *Id*. at 760.

The fact that the children suffer sexual abuse in the first place is a horrible reality. By viewing and sharing the digital record of these children's suffering, the defendant continued the exploitation for his own and others' gratification every time he viewed or exchanged these images. When these pictures are distributed over the internet, and when people such as the defendant seek them out and create a demand for them, the victims are left unable to heal, haunted by the images for the rest of their lives. *United States v. Stevens*, 197 F.3d 1263, 1267 (9th Cir. 1999). As the victim in one of the more commonly-traded series eloquently stated:

> [I] am living everyday with the horrible knowledge that someone somewhere is watching the most terrifying moments of my life and taking grotesque pleasure in them. I am a victim of the worst kind of exploitation: child porn. Unlike other forms of exploitation, this one is never ending. Everyday people are trading and sharing videos of me as a little girl being raped in the most sadistic ways. They don't know me, but they have seen every part of me. They are being entertained by my shame and pain.
>
> \* \* \*
>
> I wonder if the people I know have seen these images. I wonder if the men I pass in the grocery store have seen them. . . . I wish one day I could feel completely safe, but as long as these images are out there, I never will. Every time they are downloaded I am exploited again, my privacy is breached, and my life feels less and less safe. I will never be able to control who sees me raped as a child.

> \* \* \*
> What is so frightening is that I could have walked past him any day on the street and not know that he would have seen me being raped as a little girl, and enjoyed my pain and humiliation. Any one of them could be around me and I would not even know it.

The victim in the Misty series also the added harm of knowing that her images are traded in her victim impact statement:

> Every day of my life I live in constant fear that someone will see my pictures and recognize me and that I will be humiliated all over again. It hurts me to know someone is looking at them – at me – when I was just a little girl being abused for the camera. I did not choose to be there, but now I am there forever in pictures that people are using to do sick things. I want it all erased. I want it all stopped. But I am powerless to stop it just like I was powerless to stop my [abuser].
> \* \* \*
> It is hard to describe what it feels like to know that at any moment, anywhere, someone is looking at pictures of me as little girl being abused . . . and is getting some kind of sick enjoyment from it. It's like I am being abused over and over and over again.

Further, as this Court well knows, in addition to broad harm to the children exploited in images which are traded online, the supply and demand in the world of child exploitation poses additional harm and risk to the community. Particularly given the large collection of CSAM the defendant bragged about having, it is clear he not only exposed the victims in the images to additional harm, but also contributed to the demand for child pornography. As with any business, a demand causes the supply to increase. In the case of child pornography, receiving, possessing, and distributing child pornography directly contributes to the demand for more, increasing the sexual victimization of still more children. The Ninth Circuit has repeatedly recognized this connection, such as in *United States v. Blinkinsop,* 606 F.3d 1110 (9th Cir. 2010), stating,

8

> [M]erely possessing [or receiving] child pornography is not a victimless crime," because "**it fuels the demand for the creation and distribution of child pornography**," and evidence shows "the harm that children suffer when they are used in the creation of child pornography. . .when that pornography is distributed to others.

*Id.,* at 1118, fn 7 (citing *United States v. Daniels*, 541 F.3d 915, 924 (9th Cir. 2008) (emphasis added)). *See also, United States v. Adams*, 343 F.3d 1024, 1032 (9th Cir. 2003); 136 Cong. Rec. at S4730 ("those who possess and view child pornography encourage its continual production and distribution").

The harm of child pornography is even further exacerbated when one considers that this crime is one which is often used to facilitate new abuse and the production of new images. Courts and Congress have recognized that defendants often use child pornography to show to other children as part of the grooming process in getting the children to believe that having sex with adults is acceptable. *United States v. Maxwell*, 386 F.3d 1042, 1065 n. 22 (11th Cir. 2004) (quoting Congress' findings that child pornography is often used as part of method of seducing other children into sexual activity). Indeed, the chats in this case show that this defendant advocates exactly that method to entice children into sexual curiosity.

This defendant confirms what Courts and researchers have consistently recognized: that people who have an interest in child pornography often molest children.[3] As reflected by his charges, this defendant did more than distribute and possess CSAM – he sought to create it. Worse, he encouraged others to do so, and

---

[3] In Seto, Cantor, and Blanchard, "*Child Pornography Offenses Are a Valid Diagnostic Indicator of Pedophilia*" Journal of Abnormal Psychology, 2006, Vol. 115, No. 3, pp. 610–615, the authors found that collectors of child pornography were 2.8 times more likely to be pedophiles than other offenders against children. They wrote, "[o]ur results indicate that child pornography offending is a valid diagnostic indicator of pedophilia. . . . In fact, child pornography offenders, regardless of whether they had a history of sexual offenses against child victims, were more likely to show a pedophilic pattern of sexual arousal than were a combined group of offenders against children." *Id.* at 613. This research merely confirms the common-sense notion that someone who collects pictures and videos of children engaged in sexual activity is likely to be sexually aroused by such images.

9

advised more than one person in chats about how to begin a sexual relationship with a child.  He further bragged about numerous sexual relationships with children in his past and spoke specifically about children in his life whom he hoped to access sexually and talked about how he would do it.  The one child victim identified as a result of this investigation, while not a direct victim of the charges in this case, is forever changed because of his treatment of that child and their family.

This defendant has committed both CSAM and "hands on" offenses, making him a confirmed dual offender and therefore a much higher risk to the community. His own chats reveal that he cannot be expected to refrain from re-offending and feels no shame about his preferences.  He proudly and explicitly boasts of having sexually abused minors, collecting large amounts of child sex abuse material, and continually seeks access to minors.  Indeed, he was so motivated to meet the UC he believed was a 14 year-old in this case that he traveled all the way to Sierra Vista with an ankle monitor on.

In this case, which includes a history of failures on probation and pretrial supervision, the only deterrence which can be expected for this man is specific, and therefore requires a lengthy prison sentence and strict supervision thereafter.

### 4. Other Sentencing Factors

As the Congressional findings, studies, and case law above clearly establish, there are well grounded fears with respect to internet-based offenses relating to sexual abuse of children. Recognition of the seriousness of the offense, the harm caused by the offense, and the need for deterrence all weigh in favor of lengthy sentences for child pornography offenders.  As the Seventh Circuit recently noted:

> Young children were raped in order to enable the production of the pornography that the defendant both downloaded and uploaded-both

consumed himself and disseminated to others. The greater the customer demand for child pornography, the more that will be produced. Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor. The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so the more will be produced.

*United States v. Goldberg*, 491 F.3d 668, 672 (7th Cir. 2007).

The defendant here has demonstrated that he is a manipulative and remorseless predator who has no problem breaking any number of laws, most egregiously those designed to protect children. The defendant's pattern of interest in sexual conduct with children and CSAM goes back at least as far as 2010. With the added consideration of his antisocial traits and a history of violence with children and women, there remains no real doubt about whether this defendant poses a danger to the community.

///

///

///

///

///

///

///

## CONCLUSION

For all of the foregoing reasons, as well as the information contained in the PSR, and information to be discussed at sentencing in this matter, the government requests that this Court sentence the defendant to a term of incarceration of 288 months, to be followed by lifetime supervised release, with all of the conditions set forth in the PSR.

Respectfully submitted this 5th day of October, 2023.

>GARY M. RESTAINO
>United States Attorney
>District of Arizona
>
>*s/Carin C. Duryee*
>
>Carin C. Duryee
>Assistant U.S. Attorney

A copy of the foregoing served by electronic
or other means this 5th day of October, 2023, to:

All ECF Participants